# Smith *versus* The Exchange Bank, for use, etc.

1. A purchaser of realty at a sheriff's sale, who had issued the execution upon which the sale was made, is not in a position to deny its validity. He cannot set up the fact that the debtor had previously made an assignment in bankruptcy, covering the property sold, as a defence to an action upon an agreement which he has entered into respecting the proceeds of a subsequent sale of the same.

2. An agreement between a debtor, a creditor and a third person, that the latter shall sell lands which the debtor had conveyed to him as security, and, after the satisfaction of his claim, pay over the balance to the creditor provided he would release the lien of a levy on the personal property of the debtor, is a contract for a consideration moving

[Smith *v.* Exchange Bank.]

directly from the creditor to the third party and is not within the Statute of Frauds, requiring a memorandum in writing signed by the third person in order to render him liable.

3. A. conveyed land to his brother, B., in fee, taking a writing from him that there was no money consideration for the same, but that B. was to hold the land as security for a debt of A., for which he was surety. There was a small lien on the property at the time of this conveyance, and on this lien the property was sold and bought in by B.'s attorney for him.   Subsequently C., another creditor of A., issued execution against him and levied on A.'s personal property.   A., B. and C. then had a meeting at which B. agreed that if C. would release the lien of this levy he would pay the debt of C. out of the proceeds of the sale of said land.   To this agreement both A. and C. assented and the execution was stayed.   Later B. sold this land.   In an action by C. against B. to recover on the above agreement:

*Held*, (1) That as release was a good consideration for B.'s promise to pay C. and that it was, therefore, not a contract within the Statute of Frauds. (Act of April 26, 1855.)

(2.) That the Act of April 22d, 1856, (P. L. 532) does not apply, as C. was not seeking to enforce a specific performance of a contract for the sale of realty nor to enforce an implied or resulting trust, but merely to compel B. to perform his agreement to pay.

(3.) That the Statute of Limitations did not begin to run against C. until after the lapse of reasonable time for making the sale.

October 10th, 1885.   Before MERCUR, C. J., GORDON, PAX-SON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Greene county:* Of October and November Term 1885, No. 157.

Assumpsit, by the Exchange bank of Waynesburg, for the use of John C. Flennikin and W. T. E. Webb, now for use of F. W. Downey, against John Smith, to recover the sum of $2,249.27 with interest from April 1st, 1875, upon an alleged promise by defendant to pay the said bank the amount of a certain note, entered as a judgment against Hiram Smith, John C. Flenniken and W. T. E. Webb.   Pleas, non assumpsit, non assumpsit *infra sex annos,* also the following Statutes of Limitation applicable to this case, viz: Section 5057 Rev. Stat. of the United States, and the Act of Assembly of April 22d, 1856.

On the trial, before INGHRAM, P. J., the following facts appeared: Hiram Smith was, on and prior to June 25th, 1874, indebted to the Peoples Bank of Monongahela City on two negotiable notes—on one of which John Smith, the defendant was indorser, and on the other, Simon Rinehart.   Hiram Smith was the owner of considerable real and personal property, *inter alia,* a tract of land called the "Scott Farm," situate in Centre township, containing about seventy-two and three fourths acres.

On June 25th, 1874, Hiram Smith and wife made, executed

and delivered to John Smith, a deed absolute on its face, for this "Scott Farm." The consideration named in said deed was $2,626. Simultaneously with the delivery of the deed, John Smith executed and delivered to Hiram Smith, a paper of which the following is a copy:

June 25th, 1874.

Know all men by these presents, that I, John Smith, have received a deed from Hiram Smith and wife for a piece of land in Centre township, Greene county, Pa., containing seventy-five acres of land, for which I have paid no consideration money on land. I am to hold the land in surety for where I am bound as bail, and I am to sell the land. I am to retain out of the proceeds of sale of said land the amount I am bail for, and return the balance to said Hiram Smith. The above deed is dated June 25th, 1874, as I set my hand and seal.

(Signed)          JOHN SMITH.

On June 8th, 1875, the Exchange Bank of Waynesburg entered a judgment in the Court of Common Pleas of Greene county, against Hiram Smith, as principal, and William T. E. Webb and John C. Flenniken, as his sureties in the sum of $2,249.27.

On the same day execution issued on said judgment, which at once became a lien on a large amount of the personal property of Hiram Smith, almost sufficient to satisfy the same.

John Smith, hearing of this execution, went to see Flenniken, the cashier of said bank, and they went to the livery stable of Hiram Smith, where, after some conversation, it was mutually agreed that the bank should release the levy and stay the writ and that John Smith would pay the bank's judgment out of the proceeds of the sale of the land conveyed to him as above. It appeared that John Smith wished Hiram's personal property to be released from this levy, so that it might be seized and sold on the claims of the Monongahela City Bank for which he was surety. These claims, amounting to $935, John afterwards paid.

On August 16th, 1875, Hiram Smith filed his petition in bankruptcy, upon which he was adjudged bankrupt on August 23d, 1875. On October 22d, 1875, Daniel S. Walton, Esq., was appointed the assignee of said bankrupt, and a deed of assignment of the bankrupt's estate was duly executed and delivered to said assignee on October 29th, 1875.

On December 2d, 1875, E. M. Sayers, who held a small judgment against Hiram Smith that was a lien on the land at the time of the conveyance to John, issued execution on which the land was sold to said Sayers for $100. The sheriff's deed for the same was acknowledged on January 14th, 1876. At this sale Sayers was attorney for John Smith and bought the

land for him. Smith paid Sayers $100 for his services and Sayers transferred the sheriff's deed to him. John Smith subsequently on May 2d, 1877, conveyed this land to Samuel Webster for a consideration of $2,286.

The Exchange Bank subsequently secured the amount of their judgment from the other judgment debtors who assigned their claims to F. W. Downey, the present use plaintiff.

The present suit was brought June 21st, 1881, to recover from John Smith the proceeds of the sale of the Scott farm in accordance with the latter's promise at the time the execution of the bank was stayed. Plaintiff requested the court to charge as follows: "First. If Hiram Smith was the principal debtor and Webb and Flenniken were only sureties for him in the judgment of the Exchange Bank of Waynesburg against them: and if the said Smith, in the summer of 1875, was the owner of a considerable amount of personal property, which was bound by an execution then in the hands of the sheriff, issued on said judgment, and in order to get rid of the lien of said execution, and for the purpose of making the personal property of said Smith available for the payment of other debts of his in which the defendant was his surety, it was agreed between the said Smith, the said Flenniken and the defendant that the said Flenniken should procure the withdrawal of the said execution, and in consideration thereof the defendant should pay the judgment of the Exchange Bank aforesaid, out of the proceeds of certain real property placed in his hands by the said Smith ; this was not an agreement to answer for the debt or default of another, within the Act of April 26th, 1855." *Answer:* "Affirmed." (Eighteenth assignment of error.)

"Second. If the defendant executed the declaration of trust of June 25th, 1874, and if there was an agreement between the parties, such as is set forth in the foregoing point, the contract of the defendant was not a declaration or the creation of a trust within the Act of April 22d, 1856." *Answer:* "Affirmed." (Nineteenth assignment of error.)

"Third. If there was a contract of the character set forth in the first point, and if Webb and Flenniken were equal co-sureties for Hiram Smith, and jointly furnished the consideration for the defendant's promise as in said point set forth, then the said promise of defendant would inure as well to the benefit of the said Webb as to the benefit of the said Flenniken, and he would have the same right to use the proper remedies for the enforcement of said promise as the said Flenniken." *Answer:* "Affirmed." (Twentieth assignment of error.)

"Fourth. If the defendant executed the declaration of trust of June 25th, 1874, the fact that the property was sold by the

sheriff would not relieve the defendant from the duty of executing the trust (it being admitted that he got the property back); all that he could ask under these circumstances would be a credit for what it cost him to get the property back." *Answer:* "Affirmed." (Twenty-first assignment of error.)

"Fifth. If the sheriff's sale was the result of the fraudulent practices of the defendant, or if he could have prevented it by the proper discharge of his duties as trustee, he will not be entitled to a credit for the amount it cost him to get the land back." *Answer:* "Affirmed." (Twenty-second assignment of error.)

"Sixth. The Statute of Limitations would not begin to run until the defendant received the proceeds of the sale of the land, and the defendant not having received the proceeds until within six years of the bringing of this suit, the Statute of Limitations can have no application to the plaintiff's claim under the assignment of the administrator of Webb." *Answer:* "Affirmed." (Twenty-third assignment of error.)

"Seventh. The sale of the land by the defendant to Webster having been made in 1877, and the purchase money not having been paid for a considerable time thereafter, the plaintiff's claim as assignee of John C. Flenniken is not barred either by the limitation prescribed by section 5057 of the Revised Statutes of the United States or by any Statute of Limitations of this state." *Answer:* "Affirmed." (Twenth-fourth assignment of error.)

Defendant requested the court to charge the jury as follows:

"First. Under all the evidence in this case, the verdict should be for the defendant." *Answer:* "Refused." (First assignment of error.)

"Second. If the jury believe from the evidence that Hiram Smith filed his petition in bankruptcy in the U. S. District Court of the United States for the Western District of Pennsylvania, on August 16th, 1875, before any sale of the land in Centre township by John Smith; that upon said petition said Hiram Smith was adjudged a bankrupt by said U. S. District Court on August 23d, 1875; that D. S. Walton, Esq., was appointed the assignee of said bankrupt by said U. S. District Court on October        1875, and that a deed of assignment of said bankrupt's estate was duly executed and delivered to said assignee on October 29th, 1875; then the entire estate of the bankrupt, including the land conveyed to John Smith and its proceeds, passed to the assignee in bankruptcy of Hiram Smith as of August 16th, 1875, subject only to such valid liens and encumbrances thereon as existed at that date. *Answer:* "Refused." (Second assignment of error.)

"Third. If the jury find the facts to be as stated in the fore-

going point, then the plaintiffs cannot maintain the present action for the recovery of the assets of the bankrupt alleged to be in the hands of John Smith, and the verdict should be for the defendant." *Answer.* "Refused." (Third assignment of error.)

"Fourth. The plaintiffs not having shown, or attempted to show, that they possess any title to said land in Centre township, or to any part of its proceeds, derived from the assignee in bankruptcy of Hiram Smith, the verdict of the jury should be for the defendant." *Answer.* "Refused." (Fourth assignment of error.)

"Fifth. That as the plaintiffs claim that John Smith made a promise to John C. Flenniken to pay the judgment of the Exchange Bank against Hiram Smith, said Flenniken and Wm. T. E. Webb, out of the proceeds of the Centre township farm, they must prove to the satisfaction of the jury by clear and satisfactory evidence that the promise was made to the said Flenniken for the benefit of said Exchange Bank, and if they have failed to so satisfy the jury, then the verdict ought to be for the defendant; and the evidence of John C. Flenniken that he would let go the personal property of Hiram Smith and let John Smith's claim be satisfied therefrom, and that John Smith would step out of the real estate or the proceeds thereof; and the testimony of Hiram Smith that John C. Flenniken was to let John Smith have Hiram's personal property; that John Smith was to let Flenniken have the Centre township land, is not sufficient evidence from which the jury can find that John Smith promised John C. Flenniken to pay the said judgment." *Answer.* "Refused." (Fifth assignment of error.)

"Sixth. That if the jury find that the plaintiffs have failed to show as alleged in their bill of particulars, " That the said John Smith, grantee in said deed, at the time of the execution and delivery thereof, promised and assumed to pay the debt of the said Hiram Smith to the Exchange Bank of Waynesburg, Pa., being the indebtedness entered as a judgment to No. 215 June Term, 1875, then the verdict of the jury should be for the defendant." *Answer.* "Refused." (Sixth assignment of error.)

"Seventh. If the jury find that under the alleged arrangement between John Smith and John C. Flenniken, that Flenniken and Webb, or the Exchange Bank, were to have the land in Centre township or its proceeds only in case John Smith's claims were satisfied out of the proceeds of the personal property of Hiram Smith, then before the jury can find against the defendant the plaintiffs must convince you by clear, satisfactory and reliable testimony that John Smith's claims on the land were so satisfied out of the personal pro-

14 OUTERBRIDGE—33

perty of Hiram Smith. And if the evidence fails to show that John Smith's claims on the land in Centre township were so satisfied out of the personal property of Hiram Smith, then the verdict should be for the defendant." *Answer.* "Refused." (Seventh assignment of error.)

"Eighth. If the jury find that on or about the 12th day of July, 1875, after the alleged arrangement between John Smith and John C. Flenniken at Hiram Smith's stable, that Webb and Flenniken, the bail of Hiram Smith in the judgment to the Exchange Bank, ordered the execution on said Exchange Bank judgment at No. 52 Oct. T., 1875, (Execution docket,) that the same was issued by said bank at their request and placed in the hands of the sheriff; that he returned that said execution had been so ordered and made a return of 'no goods found,' said execution constitutes a breach of the alleged arrangement between John Smith and John C. Flenniken on the part of the plaintiffs, which releases John Smith from the terms of the alleged arrangement between him and Flenniken, and the returns of the Sheriff to said execution are conclusive on the plaintiffs, and the verdict should be for the defendant." *Answer.* "Refused." (Ninth assignment of error.)

"Ninth. That the alleged arrangement between John Smith and John C. Flenniken at Hiram Smith's stable about June, 1875, was *nudum pactum*, as no consideration for the alleged promise of John Smith at that time has been shown, and the verdict should be for the defendant." *Answer.* "Refused." (Ninth assignment of error,)

"Tenth. The plaintiffs are not entitled to recover in this suit, because they have failed to show and do not now claim to have shown, that John Smith sold said land in Centre township, or got any proceeds of sale therefrom prior to Jan. 3d., 1876, when said land was sold by the Sheriff as the property of Hiram Smith to E. M. Sayers, Esq., for the sum of $100, it appearing that said sale was confirmed by the court, the purchase money paid, and a Sheriff's deed for said land being duly acknowledged and delivered to said E. M. Sayers, Esq." *Answer.* "Refused." (Tenth assignment of error.)

"Eleventh. By the Sheriff's sale of the land to E. M. Sayers the confirmation thereof and the delivery of the Sheriff's deed to him, all parties having liens or claims upon said land, or its proceeds, were obliged to look to the proceeds realized by said sheriff's sale for satisfaction of their claims, and the plaintiffs have now no right to look to the proceeds of the sale to Webster, and the verdict should be for the defendant." *Answer.* "Refused." (Eleventh assignment of error.)

"Twelfth. That this suit is barred by Section 5057 of the

Revised Statutes of the United States.  *Answer.*  " Refused."
(Twelfth assignment of error.)

" Thirteenth. This action is also barred by the several stat-
utes of limitation of this state.  *Answer.* "Refused." (Thir-
teenth assignment of error.)

" Fourteenth. This action is barred by the Act of April 22d,
1856, entitled, " An Act for the greater certainty of title and
more secure enjoyment of real estate."  *Answer.* "Refused."
(Fourteenth assignment of error.)

The court charged the jury, *inter alia*, as follows : " It is
claimed on the part of the defendant, that at the time of this
interview at the office of Hiram Smith between John C. Flen-
niken, Hiram Smith and himself on June 8th, 1875, he did not
enter into any agreement or arrangement with Mr. Flenniken
as claimed by the plaintiff, but that after talking the matter
over he did say, that if they would release the lien of the exe-
cution upon the personal property of Hiram Smith, he would
step out of the land transaction ; but denies that he said he
would pay the proceeds of the land to the Exchange Bank
judgment—simply step out of the land transaction. . . . . On
the part of the plaintiff, it is claimed that John Smith had no
right to pay out any part of the proceeds of the sale of that
farm, that it belonged to the Exchange Bank by the arrange-
ment entered into between Mr. Flenniken, Mr. John Smith
and Mr. Hiram Smith on the 8th June, 1875; and that any
payments that he may have made after that, were not proper
payments and he should not have credit with them here.  If
after the receipt of this money by John Smith from Mr. Web-
ster, he was compelled to pay for Hiram Smith any sums of
money that he could not defend himself against, he would be
entitled to a credit for that amount.  But he had no right to
go around and pay some such items as he mentioned here in
the way of taxes, without the consent of Mr. Flenniken or the
Exchange Bank.  For whatever amount you find he did pay
legitimately and honestly, he would be entitled to a credit,
but for the items he should not have paid without the permis-
sion of Mr. Flenniken or the Exchange Bank, he would not
be entitled to a credit here as against this claim of the Ex-
change Bank.  There may be other items of defence, gentle-
men of the jury, mentioned by the different witnesses, and
other matters claimed by the plaintiff that we have omitted to
call your attention to, but it will be your duty to recollect
them, and, if after going over all the evidence in the case, you
should feel satisfied that the defendant has paid out honestly
and fairly the money he received from Mr. Webster upon
proper claims against that fund, provided he executed the
paper which it is claimed by the defendant he did execute at

the time he received the deed from Hiram Smith and wife, then the defendant would be entitled to your verdict. But if you should find, after going over all the evidence in the case, and giving him credit for all that he is legitimately entitled to, that there is still some money remaining in his hands, then the plaintiff would be entitled to a verdict for the difference between the amount he received from Mr. Webster and the amount he is entitled to have credit for as against that fund." (Fifteenth, sixteenth and seventeenth assignments of error.)

Verdict for plaintiff for $931.61 and judgment thereon. Defendant then took this writ, assigning for error the answers to the above points and the portions of the charge quoted.

*A. A. Purman,* (*P. A. Knox* with him) for plaintiff in error.—To enable the Exchange Bank to enforce the alleged contract between John C. Flenniken and John Smith by a suit in its own name, it must be the *sole* beneficiary of the alleged contract between John C. Flenniken and John Smith: Bourne *v.* Mason, 1 Ventris, 6; Pigott *v.* Thompson, 3 B. & P., 147. And further, no action would lie against John Smith by the Exchange Bank in its own name, to enforce the alleged promise, because the land having been conveyed by Hiram to John long before the making of the alleged promise, the said promise was upon a passed act, upon an executed consideration, so far as the land is to be regarded as the consideration of the promise, and thè Exchange Bank not having requested the said John Smith to make said promise, the same is void: 1 Parsons on Contracts, sec. 16, chap. 1, page 391; 2 Wharton Law of Contracts, sec. 784, and the notes to said section; 1 Wharton Law of Contracts, secs. 184 and 506; Edmundson *v.* Penny, 1 Barr, 335.

The parol promise of John Smith to John C. Flenniken is within the Statute of Frauds, and ingenuity cannot prove, either by reason or authority, that this case falls within the class known as an exception to the Statute of Frauds, without obliterating the plain distinction between a parol promise to pay the debt of another, and a parol promise which obliterates the old debt and novates or substitutes the new parol promise for the old debt: Act April 26th, 1855; Eshleman *v.* Harnish, 26 P. F. S., 97; Haverly *v.* Mercur, 28 Id., 257.

Moreover, the alleged parol promise by John Smith to John C. Flenniken is within the operation of the Act 21st March 1772. (Purd. Dig. 830.)

Under the proceedings in bankruptcy and by operation of law, all the estate of the bankrupt of whatever kind, and wherever and however situate, that he had on Aug. 16th, 1875 the date of the filing of his petition in bankruptcy, vested in

[Smith v. Exchange Bank.]

and passed to said assignee in trust for the ceditors of the bankrupt: Sec. 5044 Rev. Stat. U. S.; Glenny v. Langdon, 98 U. S., 20.

*R. F. Downey*, (*C. A. Black* and *Wyly, Buchanan & Walton* with him) for defendant in error.—There was nothing in the reservation of the return of the balance of the proceeds of such sale to Hiram Smith that would interfere with or prejudice the rights of any creditor. A debtor has a right to transfer any of his property to a creditor to pay an honest debt when not in fraud of other creditors: Covanhovan v. Hart, 9 Har., 495; Wiener v. Davis, 6 Har., 331; Clemens v. Davis, 7 Barr 264.

The Statutes of Frauds do not prevent a declaration of trust from being made by parol. Wiser v. Allen, 11 Norris 317; Hays v. Quay, 18 P. F. S. 263.

But there was a consideration for this promise. The Exchange Bank stayed their execution. This under the evidence was not for the purpose of giving time to the defendant in the execution alone, but it was under the contract and proposition of John Smith that his debt should get the benefit of the personalty of Hiram Smith, levied upon on the Exchange Bank execution. It was a surrendering of a valuable right. John Smith might and should have gotten enough out of the personalty of Hiram Smith to have paid the Monongahela City Bank claim, had he moved promptly, after the Exchange Bank writ was stayed. The Exchange Bank by accepting the promise lost their lien on the property, whether the promisor actually secured a benefit from it or not: Silvis v. Ely, 3 W. & S., 428; Dock v. Boyd, 12 Nor., 94; Stoudt v. Hine, 9 Wright, 30; Clymer v. DeYoung, 4 P. F. S., 118; Malone v. Keener, 8 Wright, 110; Wynn's Adm'r v. Wood, 1 Out., 221; Hind v. Holdship, 2 Watts, 105.

It is a general rule that a Statute of Limitation does not begin to run until a right of action is completed. Marsteller v. Marsteller, 12 N. 350; Finkbone's Appeal, 5 N., 368. The right of action was not complete here until the sale by the trustee, and the reception of the purchase money by him.

This is a suit merely to enforce the payment of money due the estate of the bankrupt on contract. There is no such adverse interest claimed by the plaintiff from the defendant as is contemplated by the Act of Congress : Sedgwick v. Casey, 4 Nat. Bank. Reg. Reports 496 ; Smith v. Crawford, 9 Id. 38.

Mr. Justice TRUNKEY delivered the opinion of the court, October 26th, 1885.

Hiram Smith conveyed to his brother John, by deed dated

June 25th, 1874, a tract of land for the expressed consideration of $2,626. Although a formal receipt was signed for this sum, none of it was actually paid. On the date of the deed John Smith gave to Hiram a writing setting forth that he had received the deed, had paid no money, was to hold the land as security for what he was bound as bail, and was to sell the land, retain out of the proceeds the amount he was bail for, and return the balance to said Hiram.

E. M. Sayers, who held a small judgment against Hiram Smith, that was a lien on said land before the conveyance to John, issued execution, on which the land was sold at sheriff's sale to said Sayers for $100, and the sheriff's deed was acknowledged on January 14th, 1876. At the time of this sale Sayers was attorney for John Smith, and bought the land for him. Smith paid Sayers $100 for his services respecting the sale, and Sayers transferred the sheriff's deed to Smith—this was done to perfect the title. Instead of selling the land, in pursuance of his agreement, Smith so proceeded that the ostensible title in fee was vested in himself. And on May 2d, 1877, he conveyed the land to Webster for the consideration of $2,286.

On June 8th, 1875, the Exchange Bank obtained judgment for $2,249.27 against Hiram Smith, Webb and Flenniken, said Smith being the principal, and the other defendants his sureties, and on same date execution was issued. This judgment became a lien on the land mortgaged by Hiram Smith to John. Flenniken had control of the execution, was interested as surety, but the debt was then owing to the bank. *Prima facie* Flenniken was acting for the bank, and if an agreement was made for release of the levy and stay of execution, in consideration whereof John Smith would pay the debt, in absence of evidence to the contrary, .the presumption is that the parties to the agreement were John Smith and the plaintiff in the execution. The verdict establishes that such agreement was made. There was ample testimony to warrant a finding by the jury that said execution was the first lien on Hiram Smith's personal property, which was worth about $2,000, that John Smith was indorser for Hiram for another debt, that Hiram and John and Flenniken came together, that it was mutually agreed that the bank would release the levy and stay the writ, and that John would pay the judgment to the bank out of the proceeds of the sale of the land, and that Hiram assented to the arrangement. For some cause, although John held the mortgage for his security, he desired that Hiram's personal property should be freed from that levy so that it could be taken on the debt for which he was surety or indorser, hence the arrangement. The contract, if in one sense to pay his brother's debt, was for a consideration moving directly

[Smith v. Exchange Bank.]

from the bank to himself, and he was to pay the debt out of proceeds of sale of his brother's property. When the bank released the levy and stayed the writ it performed its part of the contract, it was not bound to see that John Smith's claim against Hiram was paid out of Hiram's personal property. Although the bank afterwards issued another writ, none of the personal property which had been released was levied on, nor was anything done to interfere with the rights of John under his contract with the bank. The first, fifth, seventh, eighth, and ninth assignments cannot be sustained.

As the case stood before the sheriff's sale of the land, John Smith was a mortgagee in possession, with power to sell, and the judgment of the bank was a lien. Hiram Smith was adjudicated a bankrupt; but the sheriff's sale was on a lien that had attached before the proceeding in bankruptcy was begun, and was suffered to be made without hindrance by the assignee, or the U. S. District Court. If the sheriff's sale was valid under the laws of this commonwealth, nothing in the bankruptcy of Hiram Smith invalidates it. John Smith is not in position to deny the validity of the sale he procured. As an abstract proposition, the defendant's second point, if answered at all, should have been affirmed, but when considered in connection with his third and fourth points the three were rightly refused.

This contract is not within the Act of April 26th, 1855, which declares that no action shall be brought to charge the defendant upon any special promise to answer for the debt or default of another, unless the agreement be in writing and signed by the party to be charged. Where M. owed a debt to B. and D., saying he had money of M.'s in his hands, promised to B. that if he would give time to M. he would see that the debt was paid to B., and B. agreed not to push his claim against M., but did not surrender his claim and afterwards prosecuted it to judgment against M., it was held that the promise of D. was not within the Statute of Frauds. Where the promise is to apply the funds or property of the debtor in the hands of the party, the debtor consenting, it is unnecessary that the creditor should give up recourse against the debtor upon the original claim: Dock v. Boyd & Co., 93 Pa. St., 92. This case is clearly within the exception to the Statute. The creditor's release was a good consideration for John Smith's promise to pay the debt, and he had possession of the debtor's land out of which he was to raise money for the payment. It was an original, not collateral, contract, and it is no matter that Hiram continued liable for the debt. Nor does the Statute of Limitations bar the action, for it was begun June 18th, 1881, less than six years after the sheriff's deed was ac-

knowledged. Prior to January 14th, 1876, the defendant had neither sold the land nor changed the title. The plaintiff's right of action did not accrue until the lapse of a reasonable time for the defendant to make the sale, and if the right accrued before the sale to Webster it did not before the sheriff's sale which was less than eight months after the defendant's promise to pay the judgment. This contract was with the bank, not with Flenniken who acted for the bank. Whether Flenniken was adjudged a bankrupt, and what was done with his estate, are questions foreign to this investigation, and the limitations of actions provided in the Bankrupt Laws do not apply. Equally foreign to the present inquiry is the 62d section of the Act of April 22d, 1856, P. L. 532. The plaintiff is not seeking to enforce specific performance of a contract for sale of real estate, nor to enforce an equity of redemption, nor to enforce an implied or resulting trust as to realty, but merely to compel the defendant to perform his contract to pay a debt. His liability to pay that debt is not dependent on his conduct relative to the land. If he gave the land away, or wrongfully suffered or procured a sheriff's sale of it to himself, or kept it an unreasonable time without sale, is he thereby relieved from his contract? His obligation is not absolved by his bad faith or legerdemain. There is no error in matters complained of in the tenth, eleventh, twelfth, thirteenth and fourteenth assignments, at least none against the defendant. And if the time stated in the plaintiff's sixth and seventh points when the Statute of Limitations would begin to run, is incorrect, the error was harmless, for the period of six years prior to the beginning of the suit began at an earlier date than is named in these points.

The learned counsel for the defendant rightly says that the defeasance given by John Smith to Hiram on June 25th, 1874, was no declaration of trust in favor of Flenniken and Webb, or the Exchange Bank. But as the case stood it did no harm to call the defeasance a declaration of trust, and to rule that the contract between the bank and the defendant "was not a declaration or the creation of a trust within the Act of April 26th, 1856." Some of the plaintiff's points and some of the instructions of the Court were drawn out by the ingenuity of the defendant in presenting the law of trusts as to really, and the Bankrupt Laws, and the Statute of Frauds, but not so as to heavily cloud the simple contract of the defendant to pay the debt owing by Hiram Smith to the plaintiff. The defendant has no reason to complain of the affirmance of the plaintiff's second point. It is true beyond question that the alleged agreement upon which the plaintiff claimed to recover was not a trust within the statute.

We are not convinced that the court erred in affirming the plaintiff's first point. In the point and in the general charge it was submitted to the jury to find whether the agreement was that "Flenniken should procure the withdrawal of the said execution, and in consideration thereof the defendant should pay the judgment of the Exchange Bank aforesaid, out of the proceeds of certain real property placed in his hands by the said Smith," and also whether Flenniken did procure the withdrawal of the execution. As the testimony was submitted the jury found such agreement was made, that the execution was withdrawn, that afterwards the representatives of Webb and Flenniken were compelled to pay the judgment, and that they assigned their interests to the present use plaintiff. When the bank withdrew the execution it ratified the agreement made by Flenniken, even if Flenniken was not previously authorized to make it. When the administrator of Webb, and the assignee in bankruptcy of Flenniken, paid the bank, they became the equitable owners of the judgment—the bank is still the legal plaintiff. The plaintiff's third point was rightly affirmed.

The fifteenth, sixteenth, seventeenth, twenty-first, and twenty-second assignments cannot be sustained. We think the testimony on disputed facts was fairly submitted, that the charge was fair and properly presented the claims of the respective parties, and that if any party has cause to complain of the instructions relative to allowance of deductions from the amount paid by Webster for the land, it is not the defendant.

The defendant did not make the promise to pay the judgment at the same time that the mortgage-deed was delivered, as alleged in the third paragraph of the bill of particulars, but it did not follow that the verdict should be for the defendant. He afterwards made the promise, as alleged in the fifth paragraph of the bill. His sixth point was rightly refused.

Judgment affirmed.